IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

---

**MICHAEL C.D. and MICHAEL D.,**

        **Plaintiffs,**

vs.

**UNITED HEALTHCARE, UNITED BEHAVIORAL HEALTH, GEORGIA-PACIFIC LLC, and THE GEORGIA-PACIFIC LIFECHOICES BENEFITS PROGRAM (501),**

        **Defendants.**

**MEMORANDUM DECISION AND ORDER**

**Case No.  2:15-CV-306-DAK**

---

This matter is before the court on the Defendants' Motion for Partial Dismissal Under Rule 12(b)(6). Defendants seek to dismiss two of Plaintiffs' claims as untimely. A hearing on the matter was held on May 10, 2016. At the hearing, Defendants were represented by Joann Dalrymple and Scott M. Peterson. Plaintiffs were represented by Brian S. King. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to the matter. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff Michael C.D. is an employee of Defendant Georgia-Pacific LLC ("GP") and is a participant in the Defendant Georgia-Pacific LifeChoices Benefits Program (501) (the "Plan"). Plaintiff Michael D. is a beneficiary of the Plan. Defendant United Healthcare[1] ("UHC") allegedly acted as the third-party claims administrator of benefits under the Plan. Defendant

---

[1] According to Defendants, "United Healthcare" is not a legal entity and is incorrectly named and sued in Plaintiffs' complaint. Defendants have reserved the right to seek dismissal of the allegedly incorrectly named defendant.

United Behavioral Health ("UBH") acted as the third-party claims administrator of mental health benefits under the Plan.

Michael D. was admitted for three different levels of treatment at two different facilities. First, Michael D. was admitted for wilderness therapy at SUWS of the Carolinas from January 2013 to March 2013 ("SUWS Admission"). Second, Michael D. was admitted for residential treatment at Gateway Academy from March 14, 2013, to March 28, 2014 ("First Gateway Admission"). Finally, Michael D. was admitted for transitional programming treatment at Gateway Academy from March 29, 2014, to April 7, 2015 ("Second Gateway Admission").

Plaintiffs are seeking to recover benefits in connection with Michael D.'s three admissions. When Plaintiffs attempted to get authorization from UBH for the SUWS Admission and the First Gateway Admission, UBH denied their requests. Plaintiffs appealed UBH's denials, and UBH upheld its denials on September 24, 2013. Plaintiffs again appealed UBH's denials, and UBH again upheld its decision for the SUWS Admission on December 5, 2013, and for the First Gateway Submission on December 12, 2013. Although the final denial letters for the SUWS and First Gateway Submissions informed Plaintiffs of their right to pursue a civil action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), the letters did not specify the time limit for filing a civil action.

On April 29, 2015, Plaintiffs filed the present suit against Defendants under Section 502(a)(1)(B) of the ERISA statute, 29 U.S.C. § 1132(a)(1)(B) (2012), seeking benefits for the SUWS Admission, the First Gateway Admission, and the Second Gateway Admission.

On January 20, 2016, Defendants filed a Motion for Partial Dismissal Under Rule 12(b)(6) seeking to dismiss the Plaintiffs' claims for benefits for the SUWS Admission and the

First Gateway Admission based on the argument that the claims are time barred. Plaintiffs filed an opposition to the motion and Defendants filed a reply.

## DISCUSSION

Defendants argue that Plaintiffs' claims for benefits relating to the SUWS Admission and the First Gateway Admission should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs filed their claims after the expiration of the contractual limitations period within the Plan. Although Plaintiffs do not argue about the timing of the filings, Plaintiffs argue that the contractual limitations period is ambiguous and that the Defendants were required to disclose both the limitations period and the date the period began to run in their denial letters to the Plaintiffs. The court will discuss each of the arguments presented by the parties below.

## MOTION TO DISMISS ERISA CLAIMS UNDER RULE 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate when the plaintiff has not alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making that determination, the court must accept well-pleaded allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). When ruling on a motion to dismiss an ERISA claim under Rule 12(b)(6), the court may consider documents, such as plan documents and denial letters, if the documents are "referred to in the complaint" and are "central to the plaintiff's claim." *Id.* Where an appended ERISA plan "reveals facts which foreclose recovery as a matter of law, dismissal is appropriate." *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974); *see also* Fed. R. Civ. P. 10(c).

In this case, both the Plan and the denial letters were referred to in the Complaint, and the Plan and the relevant denial letters were appended to the Motion for Partial Dismissal or to the responses to the motion. Both sides agree that the wording within the Plan and the contents of the denial letters are central to the Plaintiffs' claims, especially as it relates to the timeliness of the claims. Therefore, the court will consider the Plan and the denial letters in its analysis of the Motion for Partial Dismissal without converting the motion to one for summary judgment.

## TIMELINESS OF ERISA CLAIMS

In general, ERISA does not provide a statutory limitations period for Section 502(a)(1)(B) claims, *see* 29 U.S.C. § 1132(a)(1)(B) (2012), so courts generally apply "the most closely analogous statute of limitations under state law." *Salisbury v. Hartford Life And Acc. Co.*, 583 F.3d 1245, 1247 (10th Cir. 2009) (citation omitted). Utah district court case law is uniform in holding that, when dealing with a self-funded ERISA benefit plan, the most analogous statute of limitations is six years under U.C.A. § 78B-2-309(2). *See, e.g.*, *Lemon v. E.A. Miller, Inc.*, No. 1:04-CV-107-DAK, 2005 WL 925656, at *4 (D. Utah Apr. 18, 2005). "Choosing which state statute to borrow is unnecessary, however, where the parties have contractually agreed upon a limitations period." *Salisbury*, 583 F.3d at 1247 (citation omitted). "An ERISA plan is nothing more than a contract, in which parties as a general rule are free to include whatever limitations they desire." *Id.* (citation omitted). The United States Supreme Court has confirmed that, where an ERISA plan provides a contractual limitations period, that internal period governs so long as it is reasonable. *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604, 610 (2013). The Tenth Circuit has enforced an ERISA plan limitations period that expired as short as six months after a final determination of benefits. *See Young v. United Parcel Servs., Inc. Employees' Short Term Disability Plan*, 416 F. App'x 734, 737-40 (10th Cir. 2011).

This case deals with a self-funded plan, so, in the absence of a contractual limitations period, the claims would be governed by the six-year statute of limitations period under U.C.A. § 78B-2-309(2). However, the Plan in this case contains a limitations provision in its claims procedures section that provides as follows: "No legal action may be commenced or maintained against the Plan, benefits claims administrator, or the Company more than one year after the benefits claims administrator's decision on your appeal." Def.'s Mot. to Dismiss Ex. A, at 80, ECF No. 26. Therefore, Plaintiffs' claims are subject to a one-year limitations period as long as the court concludes that the period is reasonable.

Plaintiffs do not argue that the one-year limitations period within the Plan is unreasonable. Instead, Plaintiffs argue that the terms of the limitations provision are ambiguous and that Defendants were required to disclose the limitations period within their denial letters, which Defendants did not do. The court will address both of these arguments.

### AMBIGUITY IN THE TERMS OF THE ERISA PLAN

By statute, ERISA plans are required to have Summary Plan Descriptions ("SPDs") that "shall be written in a manner calculated to be understood by the average plan participant" and that shall identify, among other things, "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022 (2012). "[O]ne of ERISA's central goals is to enable plan beneficiaries to learn their rights and obligations at any time" through "examining the plan documents." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (internal quotation marks and citation omitted); *see also Member Services Life Ins. Co. v. American Nat'l Bank & Trust Co.*, 130 F.3d 950, 956 (10th Cir. 1997).

Plaintiffs argue that the terms of the Plan relating to the one-year limitation period do not clearly identify the date from which the one-year timeframe begins to run. The language of the

"Limitations Period" subsection of the Plan simply states that a legal action may not be brought "more than a year after the benefits claims administrator's decision on your appeal." Def.'s Mot. to Dismiss Ex. A, at 80, ECF No. 26. Plaintiff argues that the language does not clarify whether the one-year period begins to run from (1) the denial of Plaintiffs' first internal appeal, (2) the denial of their second internal appeal, or (3) the denial arising out of their external appeal. Therefore, Plaintiffs argue that the Plan violates the requirements of ERISA's notice and disclosure requirements found in 29 U.S.C. § 1022(b).

The court disagrees with Plaintiffs' argument that the contractual limitations provision in the Plan is ambiguous. Under a section in the Plan's SPD entitled "Appealing a Claim," a process is described under which an individual who has received an adverse determination "may request a review of the decision by notifying the benefits claims administrator." Def.'s Mot. to Dismiss Ex. A, at 79, ECF No. 26. Then, "[t]he benefits claims administrator will decide on [his or her] appeal within 60 days of when it is received." *Id.* "The benefit claims administrator's decision on [his or her] appeal is final," after which the individual has only two options: (1) "seek external review" or (2) "bring an action under Section 502(a) of the [ERISA statute]." *Id.* The next two sections in the SPD are entitled "External Claim Review" and "Limitations Period." *Id* at 79-80. In the "External Claim Review" section, the individual is instructed that "[f]ollowing completion of the internal appeals process for medical benefits, [he or she] may be eligible to submit a request for external review of [his or her] medical benefit claim, which will be conducted by an independent physician external review group." *Id.* at 79. As discussed above, the "Limitations Period" section provides, "No legal action may be commenced or maintained against the Plan, benefit claims administrator or the Company more than one year after the benefits claims administrator's decision on your appeal." *Id.* at 80.

Given the structure and wording of the SPD and the procedures identified in the SPD, the court concludes that the contractual limitations provision is sufficiently clear for the average plan participant to determine both the limitation period and the date that the period begins to run. An individual who disagrees with an adverse determination would reasonably refer to the section on "Appealing a Claim." The individual would first be given instructions on the internal appeals process, which results in a final decision by the benefit claims administrator, followed by two external options, one of which has a one-year limitations period that begins following "the benefits claims administrator's decision on [the] appeal." The Plan's wording plainly distinguishes between an appeal, conducted by the benefit claims administrator, and an external review, conducted by an independent physician external review group, and the limitations period refers to the benefits claims administrator's decision on the appeal. Finally, the procedures themselves lead to an interpretation that the limitations period begins with the final decision on appeal instead of with the decision on external review. The external review is an optional procedure that is only available for certain medical benefit claims, so the external review is not a good candidate as a trigger for a limitations period to begin.

Therefore, the court concludes that an average plan participant would reasonably interpret the SPD's limitations provision as providing for a one-year limitations period that begins with the decision on the final internal appeal and that the average plan participant would not consider the provision to be ambiguous.

**REQUIREMENT TO DISCLOSE LIMITATIONS PERIOD IN DENIAL LETTERS**

The claims procedures section of the ERISA statute requires every employee benefit plan to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."

29 U.S.C. § 1133 (2012). Under this statute, the Secretary of Labor implemented regulations to set forth "minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries." 29 C.F.R. § 2560.503-1(a). One of those regulations requires a "benefit determination" to include, among other things, "[a] description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review." 29 C.F.R. § 2560.503-1(g)(1)(iv). Another regulation requires a "benefit determination on review" to include, among other things, "[a] statement describing any voluntary appeal procedure offered by the plan and the claimant's right to obtain the information about such procedures described in paragraph (c)(3)(iv) of this section, and a statement of the claimant's right to bring an action under section 502(a) of the Act." 29 C.F.R. § 2560.503-1(j)(4).

Courts disagree about what specific information these regulations require to be included in benefits denial letters. For example, several circuits have interpreted section 2560.503-1(g)(1)(iv) to require denial letters to include the contractual limitations period for filing an ERISA claim in a federal court. *See, e.g.*, *Santana-Diaz v. Metropolitan Life Ins. Co.*, 816 F.3d 172 (1st Cir. 2016); *Mirza v. Insurance Administrator of America, Inc.*, 800 F.3d 129 (3rd Cir. 2015); *Moyer v. Metropolitan Life Ins. Co.*, 762 F.3d 503 (6th Cir. 2014). However, although the three cases referenced above all analyzed the contents of final denial letters, they did not consider 29 C.F.R. § 2560.503-1(j)(4) in their analyses. The *Santana-Diaz* court discussed briefly in a footnote that 29 C.F.R. § 2560.503-1(j)(4) "appears to apply specifically to final denial letters" but assumed that 29 C.F.R. § 2560.503-1(g)(1)(iv) applied to final denial letters because the parties made "no mention of section 2560.503-1(j)(4) in their briefs." *Santana-Diaz*,

816 F.3d at 181 n.8. Other courts have interpreted 29 C.F.R. § 2560.503-1(g)(1)(iv) as only requiring denial letters to include time limits applicable to internal review procedures. *See, e.g.*, *Wilson v. Standard Ins. Co.*, 613 F. App'x 841, 844 (11th Cir. 2015) (unpublished) (finding that 29 C.F.R. § 2560.503-1(g)(1)(iv) "can also be reasonably read to mean that notice must be given of the time limits applicable to the 'plan's review procedures,' and the letter must also inform the claimant of her right to bring a civil action without requiring notice of the time period for doing so"); *Scharff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899, 907-08 (9th Cir. 2009) (declining to supplement ERISA's comprehensive scheme for regulating disclosures to participants with a California law requiring the express disclosure of a statute of limitations). In an unpublished decision, the Tenth Circuit similarly interpreted language in a plan that was virtually identical to section 2560.503-1(g)(1)(iv) as only requiring denial letters to include time limits applicable to internal review procedures. *See Young v. United Parcel Services*, 416 F. App'x 734, 740 (10th Cir. 2011) (unpublished) (concluding that requiring a notification of the time limit for filing suit "conflates the internal appeals process, and its associated deadlines, with the filing of a legal action after that process has been fully exhausted").

The court finds the Tenth Circuit's analysis to be persuasive, especially when the two regulations are considered together. As the last step in the administrative appeals process, the final denial letters permit a claimant to pursue his or her claim in federal court for the first time. Therefore, the time limits and procedures applicable to the claim in federal court are most relevant to the claimant at the time of receiving a final denial letter. But the regulations do not require time limits to be included in final denial letters. *See, e.g.*, *Fontenot v. Intel Corp. Long Term Disability Plan*, 2014 WL 2871371, 3:14-CV-00153-AA, at *7 (D. Or. June 24, 2014) ("Thus, irrespective of ERISA's other requirements, the governing regulation, 29 C.F.R. §

2560.503-1(j), plainly does not require plan administrators to state the contractual limitations period in final denial letters."). Requiring time limits for federal court proceedings to be included in initial denial letters, where they are less relevant, but not in final denial letters, where they are the most relevant, is counterintuitive.

The court concludes that 29 C.F.R. § 2560.503-1(g)(1)(iv) only requires initial denial letters to include time limits applicable to a plan administrator's internal review procedures. The court also concludes that 29 C.F.R. § 2560.503-1(j)(4) does not require the plan administrator to include any time limits for review procedures in the final denial letters. However, both initial and final denial letters are required to have a statement informing the claimant of his or her right to bring a civil action under the ERISA statute.

In this case, the Defendants provided the information that the court concludes is required under the regulations. Although providing time limits in denial letters for bringing a civil action under the ERISA statute may be a good idea and may be helpful to the claimant, it is not required under the governing regulations.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion for Partial Dismissal Under Rule 12(b)(6) is GRANTED because the SUWS Admission and the First Gateway Admission are time barred by the one-year contractual limitations period.

DATED this 17th day of May, 2016.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge